EDWARD PARMENTIER *vs.* MOORE FABRIC COMPANY.

FEBRUARY 27, 1946.

PRESENT: Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an appeal by the petitioner from a decree of the superior court denying him the relief prayed

for under the workmen's compensation, act, general laws 1938, chapter 300.

The petitioner's claim that he was injured "by accident" in the course of his employment is disputed by the respondent. On direct examination petitioner, a loom fixer, testified that on January 20, 1942, he was called upon to tighten lag screws under loom 63, which job required him to use all his strength while working in "tight quarters" beneath the loom; that he braced himself outside the loom and while in this position his left leg slipped and struck a pinion gear on the side of the loom; that he felt a sharp pain, rubbed his leg and continued to work; that he looked at his leg, when he had finished, and then saw a red and inflamed spot, just below the middle of the calf, where he had scraped the leg when he hit the loom.

The petitioner further testified on direct examination that he returned to work the following day, even though he walked with a limp; that in a few days the leg began to swell but that he did not stop working until January 30, when he called a doctor, who ordered him to bed; that, about February 5, he changed doctors and, on February 16, the second doctor sent him to a hospital, where he was operated upon by Dr. Edward H. Trainor on the following day; that he left the hospital on March 6 but returned on April 3, when he was operated upon for an abscess in the area of the left kidney; and that he went back to work at the mill on June 15.

The cross-examination of the petitioner showed that the respondent intended to deny that the petitioner had been injured by an accident suffered by him in the course of his employment by the respondent, as he had testified, and that it intended to dispute his testimony on this point by showing statements by him that were contradictory thereof and by acts that were inconsistent therewith.

At the close of petitioner's testimony his counsel informed the court that he was having difficulty in securing the attendance of the doctors, who were all admittedly within the

jurisdiction, whereupon the court granted him two continuances, which extended over a period of a week. When the doctors failed to appear in court at the end of that time, the respondent agreed to proceed with its case, reserving unto the petitioner the right to put in testimony by his medical witnesses if they came to court before the case was definitely closed.

. The witnesses for the respondent were Antonio Schiappa, petitioner's immediate superior at the mill, Linus Carlson, respondent's · superintendent, and William Copeland, an agent of respondent's insurer, who produced a written statement which the petitioner had signed at the hospital on February 20. This statement was admitted in evidence. The respondent also put in evidence, without objection, certain hospital records. ·It is obvious that we cannot refer to all this testimony with any particularity but must confine ourselves to such portions thereof as will illustrate its general character and tenor.

The testimony of both Schiappa and Carlson, who saw petitioner on various occasions before he first went to the hospital, was to the effect that, with the possible exception of a statement to Carlson hereinafter mentioned, the petitioner never told either of them that the injury to his leg was due to an accident at the mill. Schiappa testified that, when he saw the petitioner walking with a limp while at work after January 20, he asked him what was the trouble and that his answer was: "I don't know what is wrong with my leg. It is sore." During one of Schiappa's visits to petitioner's home shortly after January 30, the latter, in referring to the condition of his leg, said that "he had had a boil on his arm and his system was poisoned at that time."

Superintendent Carlson testified that he visited the petitioner at his home a number of times. Before the petitioner changed doctors he told Carlson that he was "in a squatting position working on the loom and when he got up his leg felt asleep and numb"; and on another occasion he said that "The doctor told him that his system was poisoned and that

after he got rid of that he would be all right." Carlson also testified that on still another occasion, after the change in doctors, the petitioner said that the doctor had told him that the injury to his leg was "due to an accident or a bruise of some kind that he got—a sprain", and that "he had hurt himself on loom 63 but didn't think anything about it on the 20th of January." Carlson then notified respondent's insurer.

The testimony of Copeland, insurer's agent, in substance is that by questions and answers he took a full and complete statement from the petitioner with reference to the latter's injury and previous condition of health; that such statement was reduced to writing in narrative form by the witness in petitioner's presence; that he gave this statement to the petitioner to read and asked him to sign it, if it was satisfactory; and that the petitioner signed the same after he had written the following immediately at the end of the statement: "I have read the above 3½ pages and find them true."

The pertinent parts of the statement are as follows: "I worked on this loom sitting on my left leg with it folded under me and my right leg out straight. . . . It was just the left leg that went to sleep but both legs were tired from the cramped position I had been working in. . . . I didn't hit or bang my leg at any time while I was working nor did I twist or sprain this left leg. I trace the whole trouble back to the night I was sitting with my leg under me as the leg bothered me only after that."

Under cross-examination the petitioner had testified that this statement was taken shortly after his operation; that he only "glanced" over it and did not "take particular care to read every word that appears on that"; that he did tell Copeland that he hurt himself at the mill; and that his alleged answer that he did not hit or bang his leg while working was in reply to a question by Copeland as to whether he had bumped his leg at the mill so as to require medical attention *before* January 20, 1942.

With reference to his illness when he was first admitted to the hospital, on February 16, 1942, the hospital record reads in part as follows: "Four weeks ago patient was working in mill when he noted a 'cramp' in his left leg while sitting on his haunches. He walked about and it felt 'stiff'. He sat on a stool and rubbed his calf for a minute as it felt asleep. He claims it remained stiff for ten days, at which time he called his L.M.D. because of beginning pain and swelling near shin bone. No history of trauma." There is nothing in the hospital record of petitioner's second hospitalization that bears on the matter now under consideration.

At the close of respondent's testimony the petitioner called Dr. Edward H. Trainor, who testified that he operated on the petitioner for a localized abscess from some infection in the leg; that such infection was caused by "anything that might break the skin. It might be a blow or a cut"; that all he knew about petitioner's case was what he had gathered by reading the hospital record, and that he was not testifying as to how the petitioner was hurt.

Petitioner's counsel closed his case without introducing testimony of any of the doctors who had treated the petitioner before he went to the hospital. The only explanation that counsel gave for their absence was that he did not see them in court.

From the foregoing evidence the trial justice found that the petitioner had failed to establish, by the required burden of proof, that he had received an injury by accident arising out of and in the course of his employment on January 20, 1942. The petitioner contends before us that such finding was wholly unsupported by any legal evidence and therefore is reviewable by this court. He apparently takes the position that since the respondent produced no direct evidence in conflict with petitioner's testimony as to the happening of the accident, his testimony on that point must be accepted as true and treated as undisputed evidence. We cannot agree with such contention.

The burden was upon petitioner to prove his case by credible evidence of probative force. *Botelho* v. *Tredennick, Inc.,* 64 R. I. 326. On the issue whether there was an accident in the course of employment, the facts presented before the trial justice and the deductions which might reasonably be drawn therefrom constitute legal evidence on that disputed issue. *Jillson* v. *Ross,* 38 R. I. 145. Questions respecting the credibility of witnesses or the weight of legal evidence are questions of fact and not of law. *Enos* v. *Industrial Trust Co.,* 62 R. I. 263.

There was legal evidence in this case which, if believed, tended to cast substantial doubt upon petitioner's credibility, thus leaving the evidence as a whole open to different reasonable inferences. A conclusion of the trial justice by way of reasonable inference from legal evidence is a finding of fact. Power to determine questions of fact is placed solely in the superior court by our workmen's compensation act. For the reasons stated, we find that the decision of the trial justice was without error.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*George Triedman, John M. Booth,* for petitioner.

*Sisson, Fletcher, Worrell & Hodge, Paul H. Hodge,* for respondent.